IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| RANDALL S. YOUNG, *et al.* | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. H-03-1859 |
| | ) | |
| | ) | |
| MEMORIAL HERMANN HOSPITAL | ) | |
| SYSTEMS, *et al.* | ) | |
| | ) | |
| Defendants | ) | |

MEMORANDUM AND ORDER

Before the court is a motion to dismiss brought by Memorial Hermann Hospital Systems, Stacy MacDonald, R.N., and Alie Riedle, R.N. (Memorial Hermann). Doc. 118. The Plaintiff, Randall S. Young (Young), responded and moved for an extension of time. Doc. 119 and 121. Memorial Hermann responded to Young's motion. Doc. 129. Young filed a reply to the response Memorial Hermann filed. Doc. 136 and 138.

Memorial Hermann's Motion to Dismiss is DENIED. Doc. 118.

Young's Motion for a Grace Period is DENIED. Doc. 119 and 121.

I.      BACKGROUND

On March 29, 2003, Young suffered a stroke and was taken to Memorial Hermann Hospital. The triage nurse, Stacy MacDonald, R.N., examined Young. She noted "the chief complaint as 'altered mental status.'" Plaintiff's Response at 3 (Doc. 119). Later, an emergency room nurse, Alie Riedle, R.N., examined Young. She documented that Young "could not verbalize comprehensible words" and that he "had

right 'hand weakness - flaccid."  Id.  However, no evidence suggests that either nurse made any physician aware of these symptoms or contacted a specialized team of doctors described as "the Stroke Team."  No one diagnosed Young as having suffered a stroke until after 3:00 AM on the next morning, March 30, 2003.  Young suffered permanent neurological damage from the stroke.

Young filed suit on May 29, 2003.  He served Memorial Hermann with a set of expert reports on November 24, 2003.  Paul M. Katz, M.D. (Katz) and Barbara J. Murphy, R.N., L.P. (Murphy) wrote reports.  Katz is a physician who specializes in treating strokes.  Murphy is a nurse with experience in emergency medicine.

The report by Katz is attached as Exhibit A to the Plaintiff's Response (Doc. 121, Exh. A, "Katz Report").  The report by Murphy is attached as Exhibit C to the Plaintiff's Response (Doc. 121, Exh. C, "Murphy Report").  The Katz and Murphy Reports conclude that Young suffered permanent damage because Memorial Hermann did not treat his stroke promptly.  The reports describe Memorial Hermann as negligent because its medical personnel, including its nurses, examined Young but failed to observe or communicate the readily apparent signs of a stroke to other medical professionals who could have prevented permanent damage.

MURPHY REPORT

The Murphy Report stated that "[t]he applicable standard of nursing care that a reasonable, prudent emergency department nurse should have provided to Randall Young under the same or similar circumstances and at the time and place that the health care was provided include the following:

> (1) "A complete assessment of the presenting symptoms of [altered mental state] in order to assess the possibility of a stroke or other brain insult."

(2) "Recognition of presenting signs and symptoms of an acute stroke."

(3) "A systematic neurological assessment to monitor for changes in neurological status in an orderly and consistent manner, consisting of level of consciousness, pupil size and reactivity, ability to speak, extremity mobility and sensation."

(4) "A complete set of vital signs on admission and every 15 minutes thereafter to assess for instability."

The Murphy Report opined, "the emergency nurses at Memorial Hermann

Hospital failed to meet the applicable standard … in the following ways:

(1) "Nurses failed to provide a complete assessment for the presenting symptoms of [an altered mental state]. There is no indication of the approximate time of onset of symptoms, a critical piece of information useful in determining if a stroke patient is eligible for thrombolytic therapy. There is no initial assessment of pupil reactivity to light or the patient's orientation to surroundings. The right hand is noted to be weak/flaccid. There is no notation of assessment of lower extremities."

(2) "The nurses failed to recognize the signs and symptoms of stroke in Mr. Young's presentation to the emergency department. These signs and symptoms, all of which Mr. Young exhibited, included an acute change in mental status, a flaccid right hand, aphasia, and elevated blood pressure."

(3) "The nurses failed to assess Mr. Young's neurological status in an orderly and consistent manner. They failed to assess his level of consciousness, his pupil size and reactivity, his ability to speak, and his motor or sensory function."

(4) "The nurses failed to document a complete set of vital signs was assessed on admission. The assessment of temperature was omitted until the patient had been in the emergency department for nearly one hour. There was no initial assessment of pulse oximetry. The initial blood pressure was elevated to 160/109 and should have been reassessed every 15 minutes or more often until the blood pressure was within normal range."

The Murphy Report concludes:

The failure of the nurses to accurately assess and document Mr. Young's neurological status prevented the physician from being

aware of critical information. … Had this information been available to the physicians, the Stroke Team would have been consulted immediately and Randall Young's condition would have been managed appropriately.  Had the nurses appropriately assessed and communicated their findings as to Mr. Young's signs and symptoms of stroke and his neurological changes, Randal Young's current disabilities secondary to his stroke, more likely than not, would have been prevented or lessened.

KATZ REPORT

The Katz Report argued that emergency room personnel, whether nurses or doctors, should:

(1) Recognize that an aphasic patient with right-handed weakness shows signs of a stroke;

(2) Recognize that a history of hypertension leaves a patient more vulnerable to strokes;

(3) Perform an NIH Stroke Scale examination;

(4) Perform a neurological examination; and

(5) Notify the Stroke Team so that more qualified medical personnel could evaluate treatment options.

The Katz Report blames "the nurses in the Memorial Hermann Hospital Emergency Department" because they "failed to notify the stroke team" "although [they] recogniz[ed] that Randall Young had right-handed weakness,"  But for the nurses' negligent failure to "recognize[] the signs and symptoms of a stroke"  and their failure to "alert[] the stroke team, a timely diagnosis would have been made and treatment begun sooner."  Had Young received treatment, Katz believed that "it is more likely than not that Mr. Young would have recovered with minimal or no neurological deficit" because Young, "arrived within the time frame for consideration of interventional stroke therapy, such as thrombolytic therapy" and "[a]dministration of thrombolytic therapy would have lysed the clot and restored blood flow to the brain, thus eliminating or limiting the degree of neurological deficit."

## II.        LEGAL ANALYSIS

Memorial Hermann argues that Young's case against its nurses should be dismissed because Young did not file reports from medical experts that meet the requirements imposed by the Procedural Provisions of the Medical Liability and Insurance Improvement Act.  Vernon's Ann. Texas Civ. St. Art. 4590i § 13.01 (2003), repealed by Acts 2003, 78th Leg., ch. 204, § 10.09, eff. Sept. 1, 2003.

Plaintiffs bringing a "health care liability claim" to serve an "expert report" on each defendant.  Vernon's Ann. Texas Civ. St. Art. 4590i § 13.01(d) (2003).  The expert report must, "provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed."  Vernon's Ann. Texas Civ. St. Art. 4590i § 13.01(r)(6) (2003).  To meet these statutory requirements, "the report must inform the defendant of the specific conduct the plaintiff has called into question [and] provide a basis for the trial court to conclude that the claims have merit."  *American Transitional Care Centers of Texas, Inc. v. Palacios,* 46 S.W.3d 873, 879 (Tex. 2001).  However, the report, "need not present evidence in the report as if it were actually litigating the merits. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial."  *Id.*  Additionally, plaintiffs may file "reports of separate experts regarding … different issues … such as issues of liability and causation" and no "single expert must address … both liability and causation issues for a … health care provider."    Vernon's Ann. Texas Civ. St. Art. 4590i § 13.01(i) (2003).

Read together, the Katz and Murphy reports are sufficient.  As an expert in how nurses in emergency rooms should collect information, Murphy identified both specific pieces of information that the nurses should have collected and specific procedures that the nurses should have conducted to collect information.  These omissions "prevented the physician from being aware of critical information" that would have caused the physicians to notify the Stroke Team of Young's condition.  According to the Katz Report, had the Stroke Team been notified, "a timely diagnosis would have been made and treatment begun sooner."  With prompt "thrombolytic therapy" that "would have lysed the clot and restored blood flow to the brain," "it is more likely than not that this patient would have" suffered "minimal or no deficit" in his neurological abilities.

Put simply:  the Katz Report states that inaction caused Young's injuries.  Both reports state that insufficient information caused the inaction that caused Young's injuries.  The Murphy Report states that the nurses' negligence caused the lack of information that caused the inaction that caused Young's injuries.  Thus, the reports provide both Memorial Hermann and the court with enough information to meet all statutory requirements:  the nurses should have collected the information that would have initiated a chain of events resulting in the Stroke Team treating Young.

SIGNED at Houston, Texas, this 4th day of January, 2006.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE